UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JORDAN JAIRAVEN JACKSON,

Plaintiff,

v.

UNKNOWN PARTY #1 et al.,

Defendants.

Case No. 1:26-cv-86

Honorable Ray Kent

**OPINION**

This is a civil rights action brought by Plaintiff Jordan Jairaven Jackson under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (Compl., ECF No. 1, PageID.4; Statement Re Consent, ECF No. 13, PageID.59.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c) and on the motion of Defendants Kimberly Betcke[1] (named as Unknown Party #1) and Kurt Miller for summary judgment based upon Plaintiff's failure to exhaust his administrative remedies before filing suit (ECF No. 8). For the reasons set forth below, the Court will dismiss Defendant Miller and Defendant MDOC Medical Staff for failure to state a claim on which relief may be granted. Moreover, the Court will grant the

[1] Plaintiff offers different spellings of Defendant Betcke's last name. (Compl., ECF No. 1, PageID.1–3.) The Court will substitute the name used by Defendants.

motion for summary judgment filed by Defendants Miller and Betcke. Because that will resolve all claims against all parties, the Court will dismiss this action.

## **Discussion**

### I. Factual Background

Plaintiff is incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Michigan. MDOC Offender Tracking Information System (OTIS), https://mdoc-offendersearch.michigan.gov/ (indicate acceptance of terms by selecting "I Agree," enter First Name "Jordan," Last Name "Jackson," select Search, select Offender Number 768523) (last visited Nov. 5, 2026).[2] He is presently serving a consecutive sentence string with a parole eligibility date of September 16, 2026, and a maximum discharge date of May 11, 2028. *Id*. Plaintiff's sentences were imposed following Plaintiff's entry of guilty pleas to two counts of retail fraud and one count of resisting and obstructing in the Oakland County Circuit Court and after Plaintiff's entry of a guilty plea to one count of assault of a prison employee in Ionia County Circuit Court. *Id.*

The events about which he complains occurred at the Ionia Correctional Facility (ICF), in Ionia, Michigan, on October 7, 2025. Plaintiff sues the following ICF personnel: Corrections Officer Kimberley Betcke, Grievance Coordinator Kurt Miller, and Unknown Party #2 identified as "MDOC Medical Staff." (Compl., ECF No. 1, PageID.2.) Plaintiff sues Defendants Betcke and Miller in their respective individual capacities. (*Id.*) He sues MDOC Medical Staff in that Defendant's official capacity. (*Id.*)

[2] This Court takes judicial notice of the information provided by a search of the MDOC's OTIS website with regard to Plaintiff. *See, e.g., United States v. Alexander*, 543 F.3d 819, 824 (6th Cir. 2008); *Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No. 1:13-cv-313, 2013 WL 1947249, at *1 n.1 (W.D. Mich. May 9, 2013); *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821–22 n.3 (E.D. Mich. 2004).

Plaintiff's factual allegations are brief:

> On October 7th, 2025, at approximately 10:00 p.m., I began to have a seizure. My neighbor in cell 6, Cooper #517236, started to yell and bang on the door for over 10 minutes. Once no staff came to aid or at least to see what was going on, the whole unit A wing began to scream, bang, & kick the doors for a little while longer. Corrections Officer Ms. Betcke then came to my door, shined her flashlight, & walked away. I was till having a seizure, the whole time. After Corrections Officer Ms. Betcke walked away the whole unit A wing started banging again trying to regain the attention of Corrections Officer Ms. Betcke. Approximately 15 minutes later Sergeant Johnson and a couple of unknown Corrections Officers came in my cell & turned me on my side. Sergeant Johnson stated to a Corrections Officer, where's the nurse? A Corrections Officer said she's at Bellamy Creek. Sergeant Johnson said they called and she said no she's not coming over. After more than 40 minutes I was transported to the hospital. This incident was recorded by Unit A wing camera, Ms. Betcke's body cam, Sergeant Johnson's body cam, Unknown Corrections Officers' body cams, MDOC handheld camera captured the incident on October 7th, 2025.

(*Id.*, PageID.3 (cleaned up).)

## II. Failure to State a Claim

A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Iqbal*, 556

U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

When evaluating whether a complaint states a claim, the Court must "accept all well-pleaded allegations in the plaintiff's complaint as true and view facts in the light most favorable to the plaintiff, [but the Court] 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Nugent v. Spectrum Juvenile Justice Servs.*, 72 F.4th 135, 138 (6th Cir. 2023) (quoting *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023)); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation").

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff's allegations implicate the Eighth Amendment's protection from cruel and unusual punishment.

Prison officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of

adequate medical care under the Eighth Amendment has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

**A. Defendant Miller**

Plaintiff makes no allegations against Defendant Miller. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must

allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Because Plaintiff fails to even mention Defendant Miller in the body of his complaint, his allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Plaintiff has failed to state a claim against Defendant Miller on which relief may be granted.

**B. MDOC Medical Staff**

Plaintiff sues Defendant "MDOC Medical Staff" in its official capacity. The United States Court of Appeals for the Sixth Circuit, however, has concluded that a state prison's medical department is not a "person" subject to suit under § 1983. *Hix v. Tenn. Dep't of Corr.*, 196 F. Appx 350, 355 (6th Cir. 2006). For that reason alone, Plaintiff fails to state a claim against "MDOC Medical Staff" "as a matter of law." *Id.* at 356.

Moreover, to the extent Plaintiff refers to the MDOC's central division overseeing health care in all MDOC facilities, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. For that reason as well, Plaintiff's claims against "MDOC Medical Staff" are properly dismissed for failure to state a claim.

### C. Nurse at Bellamy Creek Correctional Facility (IBC)

It is also possible that, in naming "MDOC Medical Staff," Plaintiff intended to sue the nurse at IBC who spoke with ICF personnel, but declined to come over to that facility.[3] The symptoms Plaintiff describes that followed the seizure suggest that it was a serious medical event.

[3] IBC is located at 1727 West Bluewater Highway in Ionia, Michigan, across the street from ICF, located at 1576 W. Bluewater Highway.

At this stage of the litigation, the Court will assume without deciding that Plaintiff's seizure constitutes an objectively serious medical condition. *See Newberry v. Melton*, 726 F. App'x 290, 295 n.2 (6th Cir. 2018) (finding that the prisoner plaintiff's seizure, resulting in bruises, cuts, vomiting, an inability to breathe constituted an objectively serious medical condition and recognizing that "other courts treat a complete failure to respond to epilepsy and seizures associated with it as objectively serious medical needs without any analysis") (citing *Hudson v. McHugh*, 148 F.3d 859, 863 (7th Cir. 1998); *Jolly v. Badgett*, 144 F.3d 573, 573 (8th Cir. 1998); *Vandermolen v. Chamberlin*, No. 14-CV-06113, 2016 WL 4098656, at *4 (W.D. Ark. June 30, 2016)).

Plaintiff's allegations fall short, however, regarding whether the nurse's decision to remain at ICF demonstrates deliberate indifference to Plaintiff's serious medical need. Plaintiff does not allege facts that the nurse was aware of a substantial risk of serious harm to Plaintiff or that the nurse disregarded such a risk. Plaintiff does not allege what the nurse was told regarding Plaintiff's condition nor does he allege what kept the nurse at ICF. The scant allegations Plaintiff provides do not support an inference that the nurse made the wrong decision or that the nurse's choice was even negligent. Put differently, Plaintiff's allegations, even accepted as true, leave open only the "possibility" of a claim. That is not sufficient. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556 and noting that, although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully.").

**D. Defendant Betcke**

Plaintiff alleges that Defendant Betcke directly observed Plaintiff during his seizure and then walked away without taking any action. Plaintiff has by no means proven his claims;

nonetheless, at this stage of the litigation, taking Plaintiff's allegations as true, the Court cannot dismiss Plaintiff's Eighth Amendment claim against Defendant Betcke on preliminary review.

### III. Summary Judgment

Defendants Miller and Betcke also contend they are entitled to summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288–89 (1961)). "Putting all of that together, Rule 56 asks 'whether the evidence is so one-sided that one party must prevail as a matter of law.'" *DeVooght v. City of Warren, Mich.*, 157 F.4th 893, 899 (6th Cir. 2025) (quoting *Anderson*, 477 U.S. at 252).

Summary judgment is not an opportunity for the Court to resolve factual disputes. *Id*. The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021). Nonetheless, a court need not accept bare legal conclusions couched as factual allegations or unwarranted factual inferences in resolving a motion for summary judgment. *See, e.g., Yanovich v. Zimmer Austin, Inc.*, 255 F. App'x 957, 969 (6th Cir. 2007) ("Even under the generous standard of review for a grant of summary judgment, we do not 'accept as true legal conclusions or unwarranted factual inferences.'").

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478–79 (citations omitted).

Plaintiff has not responded to the summary judgment motion filed by Defendants Betcke and Miller. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such an unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id*. at 405.

Defendants contend that Plaintiff failed to exhaust his available administrative remedies before filing this action. The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This

> has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Prisoner/Parolee Grievances Policy Directive ("PD") 03.02.130 (effective Oct. 21, 2024).[4] (ECF No. 9-2, PageID.42–49.) A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ W. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ W, Y, and CC. The Policy Directive provides the following directions for completing grievance forms:

> The issue should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included.

[4] The Court takes judicial notice of the content of the MDOC policy directive in effect at the time of the events alleged in Plaintiff's complaint. The MDOC's policy directives are a proper subject of judicial notice under Federal Rule of Evidence 201(b). *See Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) ("Administrative regulations fall within the category of facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.' "); *see also International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Zantop Air Transp. Corp.*, 394 F.2d 36, 40 (6th Cir. 1968) (noting that "a [c]ourt may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority").

*Id.* at ¶ Y (emphasis in original). Within five business days after attempting to resolve a grievable issue with appropriate staff, the prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ CC. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ JJ. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ NN.

Defendants point out that Plaintiff failed to pursue any grievance related to the October 7, 2025, incident at ICF through the third step of the grievance process before he filed his complaint. Plaintiff filed his initial complaint on December 23, 2025.[5] The Court received it on January 9, 2026.

Defendants provided a Step III Grievance Report regarding Plaintiff's grievance activity. (ECF No. 9-3, PageID.51–53.) The only grievances that Plaintiff pursued to or through the third step relating to his time at ICF were not completed through the third step by the time he filed his complaint. (*Id.*)

It is not clear whether the two ICF-related grievances that appear in the report relate to the October 7, 2025, incident. That lack of clarity, however, is immaterial because neither of the grievances were pursued through the three-step process outlined in the Prisoner/Parolee

---

[5] Under the prison mailbox rule, a prisoner's court paper is deemed filed at the time he "delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276 (1988). "Under this relaxed filing standard, a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court. Cases expand the understanding of this handing-over rule with an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (internal citations omitted). Here, plaintiff signed his complaint on October 11, 2024. (Compl., ECF No. 1, PageID.4).

Grievances Policy Directive ***<u>before</u>*** Plaintiff filed his complaint. Plaintiff cannot go forward with a claim raised in a complaint if he did not exhaust his administrative remedies before the complaint was filed. *Jones*, 549 U.S. at 219 (noting "the benefits of exhaustion . . . include allowing a prison to address complaints about the program it administers *before* being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record" (emphasis added)); *see also Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) ("The Prison Litigation Reform Act requires state prisoners to follow and exhaust all applicable state grievance procedures before filing suit in a federal court.").

Based on the record before the Court, there are no genuine issues of material fact with regard to whether Plaintiff properly exhausted his administrative remedies before filing his initial complaint. He did not. Defendants are entitled to judgment as a matter of law. Accordingly, Plaintiff's § 1983 claims against Defendants will be dismissed with prejudice.

## <u>Conclusion</u>

Plaintiff has failed to state a claim against Defendant Kurt Miller or against Defendant MDOC Medical Staff. Moreover, Defendants Miller and Betcke have demonstrated that there are no genuine issues of material fact regarding Plaintiff's failure to exhaust administrative remedies before filing suit. For the reasons stated above, the Court will grant Defendants' motion for summary judgment. The Court will dismiss Plaintiff's claims against the Defendants.

The Court granted Plaintiff leave to proceed *in forma pauperis*. For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. *See* 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).

The Court will enter a judgment consistent with this opinion.

Dated: November 9, 2026

/s/ Ray Kent
Ray Kent
United States Magistrate Judge